IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIONEL WEST,<br><br>    *Plaintiff*,<br><br>  v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>    *Defendant*. | CIVIL ACTION<br>NO. 16-0334 |

**PAPPERT, J.**                            April 10, 2018

**MEMORANDUM**

Lionel West, pursuant to 42 U.S.C. § 405(g), seeks judicial review of a decision by the Commissioner of Social Security denying his claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 301, *et seq.* West contends the decision was erroneous because the Administrative Law Judge failed to adequately assess the effects of his obesity in conjunction with his other impairments. The ALJ's decision was upheld by the Appeals Council, and Magistrate Judge David Strawbridge subsequently recommended that West's request for review be denied. For the reasons below, the Court overrules West's objection to Magistrate Judge Strawbridge's Report and Recommendation and grants judgment in favor of the Commissioner.

---

[1]  Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Berryhill should be substituted for the former Acting Commissioner, Carolyn Colvin, as the defendant in this action. *See* FED. R. CIV. P. 25(d).

1

I

West filed for Supplemental Security Income on August 13, 2012, claiming that he was disabled, effective that day.[2] (R. 27–28, 180, ECF No. 7.)[3] His claim was initially denied by the Social Security Administration on January 9, 2013. (R. 27, 63.) On March 12, 2013, West requested a hearing before an Administrative Law Judge (R. 67), which was held on July 29, 2014, (R. 25–51). West, represented by counsel, testified at the hearing, as did an impartial vocational expert. (*Id.*) On August 15, 2014, the ALJ denied West's claim. (R. 12–20.) West filed a request for review with the Appeals Council on October 7, 2014. (R. 6.) The Appeals Council denied the request on November 30, 2015, rendering the ALJ's decision final. (R. 1–3, 6.) West filed this action on January 27, 2016, seeking judicial review of the ALJ's decision. (ECF Nos. 1 & 3.) On August 10, 2017, Judge Strawbridge recommended that West's request for review be denied. (ECF No. 13.) West filed his objection to the magistrate judge's recommendation on August 14, 2017. (Pl.'s Obj., ECF No. 14.)

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to West's request for review.

A

West, born on May 5, 1960, was fifty-two years old when he allegedly became disabled. (R. 18, 27–28.) He attended high school and worked for a period of time as a musician. (R. 39.) West underwent arthroscopic surgery in 1998 on his left knee and

---

[2] West initially alleged an onset disability date of December 21, 2000, but asked to amend that date to August 13, 2012. The ALJ granted the request during the July 29, 2014 hearing. (R. 27–28.)

[3] The record, consisting of 330 numbered pages, was uploaded to ECF in piecemeal fashion. *See* (ECF Nos. 7-1–4-8). The Court will cite to the record page numbers rather than the specific ECF document identifiers.

on his right knee in 2000. (R. 36.) On December 13, 2012, Dr. David Knox examined West at the request of the Pennsylvania Bureau of Disability Determination. (R. 250.) Dr. Knox reported that West's "gait and station appeared normal," that he "was able to get on to the exam table without difficulty," could "flex his lumbar spine to 90 degrees," was able to "flex both hip joints 100 degrees," and could "extend his knee to 90 degrees bilaterally." (R. 253.) The doctor noted that West suffered from "[d]egenerative joint disease involving both knees," "[l]umbosacral sprain and strain," and "[e]xogenous obesity." (R. 254.) Dr. Knox determined West's prognosis to be "fair," but reported that West could "only stand for one hour," "walk four or five blocks before…experience[ing] pain," and could only "sit for approximately one hour." (R. 251, 254.)

Three days later, Dr. Knox completed a Medical Source Statement, which is an assessment of "the claimant's ability to engage in full-time employment in a regular work setting." (R. 256.) Dr. Knox stated that West could frequently lift and carry 20 pounds, and occasionally lift and carry 25 pounds.[4] (*Id.*) The doctor also found that West could stand or walk less than one hour in an eight hour day, but that he had no limitation in sitting or pushing and pulling. (*Id.*) Dr. Knox indicated that West could "frequently" balance, "occasionally" bend, stoop, crouch and climb, but could "never" kneel. (R. 257.) Finally, Dr. Knox noted that West had no environmental restrictions or limitations on other physical functions. (*Id.*)

On June 10, 2013, West was examined by Dr. Randall Smith, an orthopedic surgeon. (R. 276–77.) Dr. Smith found that West had scoliosis, a "guarded range of motion particularly when he tries to rotate the neck to the right side," "popping and

---

[4] "Frequently" is defined as lifting or carrying "from 1/3 to 2/3 of an 8 hour day," and "occasional" is defined as lifting or carrying "from very little up to 1/3 of an 8 hour day." (R. 254.)

3

grinding" in both knees, "good structural stability," and difficulty "elevating the shoulders above the horizontal." (R. 276.) Dr. Smith concluded that West "has a cervical lumbar sprain and strain, some underlying cervical lumbar discogenic problems, a cervical lumbar radiculopathy, an internal derangement… and chondromalacia of the knees, right greater than left." (*Id.*) Dr. Smith also noted that "[m]aybe we can get some of the weight off of him and take some of the pressure off, not that, that is a major reason for his present symptoms." (*Id.*)

Three days after his examination by Dr. Smith, West had a CT scan of his lumbar spine, showing "[h]igh grade disc degeneration," "[d]isc degeneration with moderate disc protrusion with some facet joint overgrowth," and "[d]isc degeneration with mild disc protrusion[.]" (R. 289.) On July 8, 2013, West had an MRI of his right knee, which revealed that he had "[t]ricompartmental degenerative osteoarthritis of a moderate degree," "[c]hronic tear/injury posterior horn and body meniscus with only fragments remaining," "[e]xtensive degenerative signal throughout the lateral meniscus without tear," and "[i]ntact tendons and ligaments." (R. 288.) On July 15, 2013, an MRI was taken of West's left knee, revealing "[m]ild degenerative osteoarthritic changes throughout the left knee," and an "[o]blique tear posterior horn medial meniscus." (R. 287.) Finally, on July 29, 2013, West underwent an MRI on his cervical spine, which showed "[n]o evidence of cervical cord compression, expansion or internal signal aberration," "[b]road disc protrusion at C6-7 eccentric to right," and "[d]isc degeneration with diffuse broad based disc protrusion[.]" (R. 285.)

On August 5, 2013, pursuant to a referral from Dr. Smith, West was evaluated at Healing Hands Physical Therapy. (R. 318–20.) The assessment revealed that West

4

had decreased strength, joint mobility and range of motion, increased pain and muscle guarding, and poor "sit/stand tolerance." (R. 320.) West was advised to "continue physical therapy 2 days per week for 4 weeks to reach [specified] goals," and told that his potential for rehabilitation was "fair." (*Id.*)

On January 7, 2014, West was involved in car accident. (R. 292.) Two days after the accident, he was treated at Jefferson Hospital for "low back pain [and] leg numbness." (*Id.*) The emergency room physician diagnosed West with "lumbar/thoracic sprain," "muscle spasm of the back," and noted that West was taking a number of medications. (R. 291.) While at the hospital, West had X-rays taken of his lumbar and thoracic spine, which revealed "degenerative disc disease" and "multilevel degenerative endplate osteophytes" in the thoracic spine. (R. 297–98.) The physician noted that West was "feeling better with some improvement in symptoms" and did not have a "decreased range of motion" by the time he left the hospital. (R. 294–95.) West was discharged "in stable condition," with the ability to "ambulate independently [with] steady gait." (R. 293–94.)

On March 10, 2014, West was seen by his primary care physician, Dr. Donald Parks, for the injuries sustained in the car accident two months before. (R. 36, 306.) Dr. Parks' examination revealed no abnormalities in West's cervical spine and shoulders but a restricted range of motion of the lumbosacral spine. The "straight leg raising test was positive bilaterally," and the "lower extremities revealed tenderness down the left lower leg." (*Id.*) Dr. Parks diagnosed West with "acute lumbar strain/sprain" and "acute left leg strain/sprain," and opined that "the injuries [West] sustained are directly related to" the car accident. (*Id.*)

5

On March 11, 2014, West went to NovaCare Rehabilitation for physical therapy. (R. 299–303.) The NovaCare medical report stated that West had trouble "bending and lifting" and was "unable to sit up straight because of the pain." (R. 301.) West's "[o]verall rehabilitation potential" was "good," and it was recommended that he attend physical therapy three times per week for four weeks. (R. 302–03.) He failed to do so, however, and was discharged on March 19, 2014. (R. 300.) The discharge summary stated that West "did not want to work" and appeared "non-interested in PT when asked to perform exercises." (R. 299.)

B

West testified at the July 29, 2014 hearing before the ALJ. (R. 25–51.) When asked why he was unable to work, West stated that he had difficulty standing and walking due to pain in his knees and lower back, and that he suffered from uncontrolled hypertension. (R. 33–35.) West testified that he mainly watched television at home because it pained him to walk, but that he was capable of caring for his personal hygiene and drove short distances twice a month to shop for groceries. (R. 5–6, 35–36.) He stated that he had surgeries on both knees, and that he began attending physical therapy but stopped due to the pain he experienced from the therapy. (R. 37–39.) West admitted that he did not inform his physical therapist that he would not be returning, and that he was formally discharged from treatment when he failed to attend his therapy sessions. (*Id.*) At no point during the hearing did West mention his obesity (R. 36–37); his lawyer argued that West's obesity likely had an adverse effect on his knees and back. (R. 47.)

II

The Social Security Administration has promulgated a five-step process for evaluating disability claims. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016) (citing *Sykes v. Apfel*, 228 F.3d 259, 262–63 (3d Cir. 2000)). If he is not, then the Commissioner considers at the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. *Id.* If the claimant suffers from a severe impairment, the inquiry at step three is whether, based on the medical evidence, the impairment meets the criteria of an impairment included in the "listing of impairments," which result in a presumption of disability, or whether the claimant retains the capacity to work. *Id.* If the impairment does not meet the criteria for a listed impairment, the Commissioner assesses at the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC")[5] to perform his past work. If the claimant cannot perform his past work, the Commissioner attempts to determine at the fifth step whether there is other work in the national economy that the claimant can perform. *Id.* The claimant bears the burden of proof for steps one through four of this test, while the Commissioner bears the burden of proof at step five. *Id.*; *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

In her August 15, 2014 decision, the ALJ determined that West was not disabled as defined by the Social Security Act. (R. 12–20.) At step one, the ALJ found that West

---

[5] Residual functional capacity is "what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." 20 C.F.R. § 404.1545(a)(1).

had not engaged in gainful employment since the alleged disability onset date of August 13, 2012. (R. 14.) At step two, the ALJ concluded that West suffers from the severe impairments of degenerative disease of the knees, lumbosacral sprain and strain, cervical degenerative disc disease, hypertension and obesity. (R. 14.) At step three, she found that West's impairments, either alone or in combination with each other, did not meet the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 16.) At step four, she determined that West had the RFC to "perform a range of light work as defined in 20 C.F.R. § 416.967(b). He can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an eight-hour workday and stand and/or walk six hours in an eight-hour workday." (R. 17.) Given the RFC assessment, the ALJ concluded that West could not perform his past relevant work. (R. 18.) Considering West's age, education, work experience and RFC, and the testimony of the vocational expert, the ALJ determined that jobs West could perform exist in significant numbers in the national economy, including ticket taker, cafeteria attendant, and lens matcher. (R. 19.)

III

The Court reviews *de novo* those portions of the Report and Recommendation to which West has objected. *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the Court

reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The ALJ's decision "must therefore present a sufficient explanation of the final determination in order to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding." *D'angelo v. Colvin*, No. 14-6594, 2016 WL 930690, at *1 (E.D. Pa. Mar. 11, 2016) (citing *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981)). The decision need only discuss the most relevant evidence concerning a claimant's disability, "but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper." *Id.* (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)).

IV

A

West objects to the magistrate judge's finding that the ALJ did not err by failing to "explicitly weigh the impact" of his obesity in assessing his RFC and at step five of the SSA's sequential evaluation. (Pl.'s Obj., at 3.) The ALJ recognized at step two that

9

"obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system," the combined effects of which "can be greater than the effects of each impairment considered separately." (R. 15.) The ALJ's only other discussion of West's obesity, however, was to conclude that "the record does not show there are any additional and cumulative effects of obesity that would make this musculoskeletal condition of a listing-level severity, or impose limitations beyond my findings on this decision." (*Id.*)

Two Third Circuit decisions provide guidance on how an ALJ should evaluate obesity in determining whether an individual is disabled under the Social Security Act. In *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), the plaintiff argued that the ALJ had erred by failing to explicitly consider her weight throughout the disability determination. *Id.* at 552. The Court of Appeals noted that the plaintiff, who alleged disability due to back and arm impairments, had never mentioned obesity as a condition that contributed to her inability to work and had not specified how that factor would affect the analysis beyond a generalized assertion that her weight made it more difficult for her to stand, walk and manipulate her hands and fingers. *Id.* The court further explained that although the ALJ did not note or discuss the plaintiff's obesity, he adopted the limitations suggested by specialists and reviewing doctors, who were aware of her weight. *Id.* Because those doctors were aware of the plaintiff's obesity, the ALJ's adoption of their conclusions was a satisfactory, albeit indirect, consideration of the condition. *Id.* The court concluded that the plaintiff's generalized assertion regarding the effects of her obesity was "insufficient to require remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous

10

medical evidence as a basis for his findings regarding her limitations and impairments." *Id.*

In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), the ALJ determined at step two that the plaintiff's obesity constituted a "severe impairment." *Id.* at 504. At step three, however, he failed to consider the impact of that obesity in combination with the plaintiff's other impairments, including joint disease, on her ability to perform work functions, as instructed by Social Security Ruling 02-1p.[6] *Id.* The District Court upheld the ALJ's decision, relying on *Rutherford*. The Court of Appeals, however, reversed and held that the ALJ had erred, noting that "an ALJ must clearly set forth the reasons for his decision" and "conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Id.* (citations omitted). The court distinguished *Rutherford*, noting that in that case, the plaintiff had not asserted obesity as an impairment or argued that it impacted her job performance. *Id.* The court then stated:

> Here, by contrast, Diaz asserted—and the ALJ specifically determined—that Diaz's obesity constituted a severe impairment. Further, we cannot conclude, as we did in *Rutherford*, that Diaz's obesity had no impact, alone or in combination with her other impairments, on her workplace performance. To the contrary, Diaz's morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis. Although in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians as constituting adequate, implicit treatment of the issue by the ALJ, we decline to do so here, where Diaz's obesity was urged, and acknowledged by the ALJ, as a severe impairment that was required to be considered alone and in combination with her other impairments at step three.

---

[6] The Ruling instructs adjudicators "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity," and reminds them to consider "the combined effects of obesity with other impairments" when making disability determinations. SSR 02-1P, 2002 WL 34686281, at *1 (Sep. 12, 2002).

*Id.* The Court of Appeals stated that "[w]ere there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." *Id.* Thus, the court remanded because "the ALJ, having recognized obesity as an impairment, should determine in the first instance whether, and to what extent, Diaz's obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her workplace performance." *Id.* at 505.

B

West neither alleged obesity as a basis for his disability nor testified that it limits his ability to engage in work-related activities. The ALJ nonetheless explicitly recognized West's obesity as a severe impairment. (R. 14.) After identifying that severe impairment and acknowledging her obligation to consider it in making her determination, the ALJ stated that "the record does not show there are any additional and cumulative effects of obesity that would make this musculoskeletal condition of a listing-level severity, or impose limitations beyond my findings on this decision." (R. 15.) That statement, in and of itself, was insufficient. *Diaz* instructs that after acknowledging obesity as a severe impairment, the ALJ is required to "meaningfully consider the effects of a claimant's obesity, individually and in combination with [his] impairments, on [his] workplace function at step three and every subsequent step." *Diaz*, 577 F.3d at 504. Meaningful consideration requires that the ALJ "provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion…." *Id.* After stating that the record did not support finding any limitation due to West's

obesity, the ALJ was required to discuss that evidence and explain her reasoning in determining West's RFC and at step five of the analysis. *See, e.g.*, *Buchanan v. Colvin*, No. 11-4597, 2014 WL 351577, at *1 (E.D. Pa. Jan. 30, 2014) (finding that the ALJ was required to address plaintiff's obesity after finding it was a severe impairment, despite plaintiff failing to claim it was an impairment). Although the ALJ "need not employ particular 'magic' words," the ALJ never mentioned West's obesity after step two. *See, e.g.*, *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 359–60 (3d Cir. 2015) (explaining that, in determining RFC, ALJ must consider "all the evidence in the record [and] explain his rejection of any pertinent evidence"); *Thorne v. Colvin*, No. 13-2139, 2015 WL 3498642, at *4 (E.D. Pa. June 3, 2015) (finding error where ALJ recognized plaintiff's obesity but did not mention it again in his decision); *Buchanan*, 2014 WL 351577 at *2 (finding that even though ALJ stated that she considered plaintiff's obesity, the ALJ "failed to clearly set forth the reasons supporting her decision insofar as plaintiff's obesity is concerned").

C

Although the ALJ erred in failing to adequately address West's obesity, the error was harmless. Evidence in the record, including reports, testimony and medical records, does not support a conclusion that West's obesity rendered him unable to work. *See Thorne*, 2015 WL 3498642 at *4 (finding ALJ's failure to adequately assess plaintiff's obesity was harmless error where plaintiff did not allege that obesity exacerbated other pain at hearing before the ALJ). When filling out his Social Security application, West did not identify obesity as a condition that limited his work ability. (R. 141.) Similarly, when filling out the functional report section of that application,

13

West listed back and knee pain, high blood pressure, and frequent bathroom use as conditions that limited his ability to work. (R. 148.) Furthermore, in his testimony before the ALJ, West did not discuss any affect his obesity had on his ability to work, despite extensive discussion of his physical capabilities and limitations. (R. 30–37.) West mentioned his height and weight, but when asked why he was unable to work, stated that it was because of his knee and back pain (R. 30, 33–34); he never claimed that his obesity exacerbated that pain. *See, e.g.*, *Jones v. Colvin*, No. 11-6698, 2013 WL 5468305, at *1 (E.D. Pa. Oct. 1, 2013) (finding failure to adequately address plaintiff's obesity harmless error where plaintiff "failed to mention obesity when the ALJ asked him why he was unable to work"); *Suarez*, 996 F. Supp. 2d at 332–33 (same); *Thorne*, 2015 WL 3498642 at *5–6 (same); *McPherson v. Colvin*, No. 16-1469, 2016 WL 5404471, at *6 (E.D. Pa. Sept. 28, 2016) (same).

Moreover, none of West's medical reports referred to his weight as a cause of his functional limitations. Many of his medical records noted his obesity, but none of them indicated that it affected his other symptoms. (R. 52, 55, 58, 59, 141, 226, 253, 263, 276, 278, 291, 304–05, 310–12.) For example, Dr. Knox found that his ability to sit and stand was limited, but nothing in the record indicates that Dr. Knox believed West's obesity exacerbated his other conditions. (R. 251–53.) Dr. Smith referenced West's obesity, writing that "[m]aybe we can get some weight off of him and take some of the pressure off, not that, that is a major reason for his present symptoms." (R. 277.) Dr. Smith recognized that West's obesity was not a major cause of his present conditions, and his note does not indicate that West's obesity limited his ability to work in any way. West argues that his impairments, in combination with his obesity, are consistent with

the limitations on his ability to walk or stand. (Pl.'s Obj., at 5.) The records West cites, however, do not reference his obesity; they note instead other physical impairments. (R. 258, 285, 287–89, 297.) In sum, West fails to point to any evidence that supports a finding that obesity worsened his symptoms or limited his ability to work. *See Jones*, 2013 WL 5468305 at * 1 (finding harmless error where record did not indicate any additional limitation imposed by plaintiff's obesity); *Suarez*, 996 F. Supp at 332–33 (same); *Thorne*, 2015 WL 3498642 at *5–6 (same); *Lugo v. Colvin*, No. 13-7598, 2016 WL 2910104, at *4–5 (E.D. Pa. May 19, 2016) (same); *Proudfoot v. Colvin*, No. 13-07147, 2016 WL 316498, at *2 (E.D. Pa. Jan. 26, 2016) (same); *McPherson*, 2016 WL 5404471 at *6 (same).

West relies extensively on *Diaz*, but in discussing that decision, our court has reasoned that the ALJ must "limit[ ] the exercise of common sense to the analysis of the evidence of record." *Suarez*, 996 F. Supp. 2d at 332. "If an ALJ were to claim that 'common sense' led in a direction where the evidence did not follow," the ALJ "would simply be substituting his opinion for that of the medical experts, which is not permitted." *Id.* (citing *Morales v. Apfel*, 225 F. 3d 310, 319 (3d Cir. 2000)). Where the plaintiff fails to "point[ ] to any evidence in the record which would support [his] claim," the court will not "remand the ALJ's decision based on the failure to confront evidence that does not exist." *Id.* (quoting *Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2012)). Here, there was no record evidence from which the ALJ could have drawn conclusions about the effects or combined effects of West's obesity on his ability to

work.[7]  *See* SSR 02-1P, 67 Fed. Reg. 57859-02 (Sep. 12, 2002) ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record.").  Accordingly, remand is not warranted.  *See Woodson*, 661 F. App'x at 765–66 (ALJ did not commit reversible error where plaintiff did not point to specific medical evidence demonstrating that his obesity, in combination with other impairment, was sufficiently disabling); *Thorne*, 2015 WL 3498642 at *5–6 (same); *Lugo*, 2016 WL 2910104 at *4–5 (same); *McPherson*, 2016 WL 5404471, at *6 (same).  The Court overrules West's objection, approves and adopts the magistrate judge's Report and Recommendation and grants judgment in favor of the Commissioner.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J

---

[7]   Unlike here, the record evidence in *Diaz* supported plaintiff's claim that her obesity exacerbated her other conditions.  *See Diaz v. Comm'r of Soc. Sec.*, No. 07-790, 2008 WL 3154744, at *4 (D.N.J. Aug. 4, 2008), *vacated*, 557 F.3d 500 (3d Cir. 2009) (explaining that Dr. Miracle "determined that Plaintiff's obesity…created the postural limitations," and that Dr. Miranda "determined that Plaintiff's 'pain in multiple joints and back is due to multiple arthritis [ ], diabetes, [ ], and obesity.'").